In re Edward GONZALEZ, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 00–BG–1058.

District of Columbia Court of Appeals.

Argued May 2, 2001.
Decided June 7, 2001.

Edward Gonzalez, pro se.

John T. Rooney, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for Office of Bar Counsel.

Before SCHWELB, REID, and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

In a written order issued on July 27, 2000, the Board on Professional Responsibility instructed Bar Counsel to issue an "informal admonition" to Edward Gonzalez, a member of our Bar, for revealing secrets of a client. Gonzalez has excepted to the order, claiming that he did not violate any Disciplinary Rule. We agree with the Board and direct that the admonition be issued.

## I.

## BACKGROUND[1]

In 1997, Gonzalez, who is also a member of the Virginia bar, was retained by A.A. and A.A.'s company, D.B.I.,[2] to defend a suit which had been brought against them in the Circuit Court for Fairfax County, Virginia. Problems arose in the lawyer-client relationship when A.A. and D.B.I. failed to make payments to Gonzalez in accordance with their retainer agreement. During the early months of 1998, Gonzalez wrote a number of letters to A.A. in which he complained that he had not been paid. Gonzalez also accused A.A. in these letters of failing to cooperate with him in preparing a defense and of making untrue representations to him. Gonzalez warned that, unless these problems could be promptly and amicably resolved, he would move to withdraw as counsel.

The relationship between lawyer and clients did not improve, and on May 8, 1998, in accordance with his warning, Gonzalez faxed and mailed to A.A. a "Notice of Intent to File Motion for Leave to Withdraw," as well as a "Motion for Order Permitting Withdrawal from Representation." A copy of the motion was mailed to the attorney for the adverse party in the Circuit Court action against A.A. and D.B.I. In his motion, Gonzalez represented that his clients were not paying their bills in a timely manner and that they had failed to cooperate with him in preparing for trial. Gonzalez further alleged that

> [A.A.] has missed appointments on a number of occasions, failed to timely provide information necessary to the case, *and made misrepresentations to her attorneys.*

(Emphasis added.)

Attached to Gonzalez' initial motion[3] were copies of seven of the letters in which he had berated A.A. for her alleged non-cooperation and, in two of the letters, for misrepresenting certain facts to him. In these letters, Gonzalez revealed, *inter alia,* the amounts allegedly owed to him by A.A. and D.B.I. In one of the letters filed with his motion, Gonzalez advised A.A.:

> Your exposure is in the tens of thousands. The complainant asks for approximately $1 million. [Plaintiff's] attorney talks of a realistic figure around $90,000. At a minimum there is about $40,000 at stake from his payments to you.

Shortly after Gonzalez first moved to withdraw, and before he had re-filed his

---

1. Our recitation of the facts, which are largely undisputed, is taken from the Report and Recommendation of an Ad Hoc Hearing Committee, dated January 12, 2000; from the Board's Order of July 27, 2000; and from the exhibits in the record.

2. Because this case involves the improper disclosure of secrets of Gonzalez' clients, we refer to the clients by initials only.

3. Gonzalez' initial motion was rejected by the court because Gonzalez had failed to effect personal service on his clients. Gonzalez then prepared a new motion, but, at the request of the attorney who replaced him as counsel for A.A. and D.B.I., he apparently did not attach the copies of the letters to the new motion when he mailed it to the adverse party's attorney approximately a week later.

motion so as to comply with the Circuit Court's requirements, see *supra* note 3, a new attorney entered an appearance for A.A. and D.B.I., and a stipulation was filed substituting the new attorney for Gonzalez. Dissatisfied with Gonzalez' representation, however, A.A. made a complaint against him to District of Columbia Bar Counsel. In correspondence with Bar Counsel, A.A. expressed her concern regarding Gonzalez' "failure to perform legal services for me properly," and she claimed that Gonzalez had "breache[d] his obligation of confidentiality to me by revealing privileged matters detrimental to my ongoing lawsuit."

On or about August 27, 1999, in response to A.A.'s complaint, former Bar Counsel issued a "Specification of Charges" against Gonzalez in which he summarized the foregoing facts. Bar Counsel alleged, *inter alia*, that Gonzalez had knowingly revealed a confidence or secret of his client, in violation of Rule 1.6(a)(1) of the District's Rules of Professional Conduct and Disciplinary Rule DR 4–101(B)(1) of the Virginia Code of Professional Responsibility. The case was referred to an "ad hoc" Hearing Committee, and a hearing was held on October 6, 1999. On January 12, 2000, the Committee issued proposed findings of fact and conclusions of law in which it set forth the events described above. The Committee concluded that Gonzalez had not revealed a "secret" of his clients because, in the Committee's view, the principal facts disclosed by Gonzalez "should not be deemed information gained in the professional relationship between Gonzalez and his clients." The Hearing Committee further reasoned that to the extent any information revealed by Gonzalez was gained in his professional relationship, the disclosure was not detrimental or embarrassing to A.A.

Bar Counsel excepted to the Hearing Committee's findings, and the matter was heard by the Board on Professional Responsibility. The Board disagreed with the Hearing Committee's analysis and concluded that "the information [Gonzalez] included in the motion to withdraw and its attachments at least constituted 'secrets' within the meaning of Virginia DR 4–101(B)." Noting Gonzalez' argument that the Circuit Court would not have been prepared to grant Gonzalez' motion to withdraw if Gonzalez had failed to submit a reasonably detailed justification for the relief sought, the Board stated:

> We do not think the need for support for his motion can justify Respondent's decision to make public his client's secrets. Even in situations recognized in the rules as exceptions to the ban on revealing client secrets, the attorney is obligated to reveal only the minimum information necessary under the circumstances and to take steps to minimize any harm to the client's interest.

> \* \* \*

> In addition, there is no reason those documents could not have been provided to the [Circuit] Court *in camera*, so that the [Circuit] Court could be satisfied that the motion had a factual foundation, without harm to the client's interests.

Observing that Gonzalez had "made a mistake he is not likely to make again," the Board concluded that "an informal admonition is the appropriate sanction," and directed Bar Counsel to issue the admonition. Gonzalez now asks us to hold that no discipline is warranted.

## II.

## LEGAL DISCUSSION

A. *Standard of review.*

▮ Our review of the Board's proposed disposition is deferential:

In determining the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

D.C. Bar R. XI, § 9(g)(1). The Board's Rule 13.6 provides in pertinent part:

Review by the Board shall be limited to the evidence presented to the Hearing Committee, except in extraordinary circumstances determined by the Board. When reviewing the findings of a Hearing Committee, the Board shall employ "substantial evidence on the record as a whole" test.

See also In re Shillaire, 549 A.2d 336, 342–43 (D.C.1988).

■ In applying these deferential standards, we must differentiate between the Hearing Committee's findings of evidentiary, or "subsidiary," facts and its determinations of "ultimate facts," which also implicate conclusions of law. E.g., In re Micheel, 610 A.2d 231, 234–35 (D.C.1992). While we and the Board are required to defer to the former category of findings, no such deference is owed to the latter category. Id.

B. *Choice of law.*

■ Rule 8.5(b) of our Rules of Professional Conduct provides, in pertinent part, as follows:

*Choice of Law.* In any exercise of the disciplinary authority of this jurisdiction, the Rules of Professional Conduct to be applied shall be as follows:

(1) For conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise.

(Font altered.)

In the present case, the charged misconduct occurred in connection with a proceeding in a Virginia court in which Gonzalez, a member of the Virginia bar, was counsel of record. The parties, the Hearing Committee, and the Board all agree that, under these circumstances, the disciplinary rules of the Commonwealth of Virginia apply, and we so hold.

C. *Disclosure of clients' secrets.*

■ At the times relevant to this proceeding, Virginia's DR 4–101(B)(1) provided, with exceptions not here applicable, that a lawyer shall not "knowingly … [r]eveal a confidence or secret of his client." Va. S.Ct. Prof. Resp. Canons, DR 4–101(B)(1) (Michie 1998). DR 4–101(A) contains the following definitions:

"Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.[4]

4. Virginia's DR 4–101 was identical to the corresponding provision in the American Bar Association's (ABA) Model Code of Professional Responsibility. *See*, ABA, *Model Code of Professional Responsibility, in* ABA/BNA, Lawyers' Manual on Professional Conduct, Vol. Manual 1:301, at 1:323 (2001). It is also substantially similar to Rule 1.6(a)(1) and (b) of the District's Rules of Professional Conduct. On January 1, 2000, after the challenged disclosures in this case, Virginia's Code of Professional Responsibility was su-

We take no position on the question whether there has been disclosure in this case of A.A.'s "confidence[s]," *id.*, for we agree with the Board that Gonzalez revealed secrets gained in his professional relationship with A.A. and D.B.I.

This conclusion would be inescapable even if we were to confine ourselves to the text of Gonzalez' motion to withdraw, and it is reinforced by the contents of the letters attached thereto. In the body of the motion, which Gonzalez submitted to the court for filing and mailed to opposing counsel in the underlying litigation, Gonzalez alleged that A.A. not only missed appointments and failed to provide necessary information, but also "made misrepresentations to her attorneys."[5] We think it obvious that a public allegation by a client's own lawyer that the client deliberately lied to him would be "embarrassing" to the client and "would be likely to be detrimental" to her, within the meaning of DR 4–101(A). Indeed, it is difficult to understand how a reasonable person could conclude otherwise.

The Hearing Committee was of the opinion that "[t]he conduct of [A.A.] that is depicted in Gonzalez' [motion and] letters did not come to Gonzalez as a part of his fact-gathering for the case he was handling," and that therefore it "should not be deemed 'information gained in the professional relationship' between Gonzalez and his clients." We are unable to agree with this analysis. If the words "information gained in the professional relationship" are read literally and accorded their everyday meaning, then there can be no doubt that the information about A.A. disclosed by Gonzalez was so "gained." If there had been no professional relationship, then the alleged facts of which Gonzalez complained—A.A.'s non-payment of her fees, her lack of cooperation, and her misrepresentations—would not have existed, and Gonzalez would neither have known them nor revealed them. There was simply no source, other than the "professional relationship," from which Gonzalez could have "gained" the information about his clients that he chose to reveal.

With a literal interpretation of Virginia's disciplinary rule plainly supporting the Board's analysis, we discern no persuasive reason to give the rule an artificially narrow reading. Chief Judge Howard T. Markey, sitting by designation, has eloquently captured the essence of the professional obligation at issue in this case:

> The broad commitment of the lawyer to respect confidences reposed in him is his talisman. Touching the very soul of lawyering, it rests upon a "privilege" which is that of the client, not that of the lawyer. Inaccurately described as the "lawyer's privilege against testifying," the privilege of clients to bind their lawyers to secrecy is universally honored and enforced as productive of social values more important than the search for truth. Canon 4 is designed to preserve the trust of the client in his lawyer, without which the practice of law, whatever else it might become, would cease to be a profession.

*Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 607 (8th Cir.1977), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978).[6]

■ "By turns both sacred and controversial, the principle of the confidentiality

---

perseded by that State's Rules of Professional Conduct, which are now in effect.

**5.** Similar accusations are contained in at least two of the letters attached to the motion.

**6.** Aspects of the *Fred Weber* decision unrelated to the quoted language were overruled in *Multi Piece Rim Prods. Liab. Litig.*, 612 F.2d 377, 378 (8th Cir.1980).

of client information is well-embedded in the traditional notion of the Anglo–American client-lawyer relationship." CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 6.1.1, at 242 (1986). "The professional rules ... [embrace] a *broad ethical duty* not to divulge information about a client." *Id.* (emphasis added). An attorney's duty of confidentiality applies not only to privileged "confidences," but also to unprivileged secrets; it "exists without regard to the nature or source of the information or the fact that others share the knowledge." *Perillo v. Johnson,* 205 F.3d 775, 800 n. 9 (5th Cir.2000) (quoting ABA Model Code of Professional Responsibility Canon 4, DR 4–101 and EC 4–4) (internal quotation marks and alterations omitted). "The confidentiality rule applies not merely to matters communicated in confidence by the client[,] but also to *all information relating to the representation, whatever its source." Id.* at 800 n. 10 (quoting ABA Model Rules of Professional Responsibility 1.6 & cmt.5) (emphasis added); *accord, United States v. Edwards,* 39 F.Supp.2d 716, 724 (M.D.La.1999) (collecting authorities); *United States v. Mackey,* 405 F.Supp. 854, 860 (E.D.N.Y.1975) (Weinstein, J.) (emphasizing breadth of attorney's obligation). A narrow reading of Virginia's rule—a construction that would countenance some disclosures by an attorney tending to demean or belittle his client—seems to us to be contrary to the fundamental principle that the attorney owes a fiduciary duty to his client and must serve the client's interests with the utmost loyalty and devotion.

An interpretation of Virginia's DR 4–101(B)(1) by the Standing Committee on Legal Ethics of the Virginia State Bar Association supports our approach. In Legal Ethics Opinion No. 1300 (Nov. 16, 1989), the Committee took the position that "identifying data about a client of a legal aid office is a secret since it might be an embarrassment to the client to have it revealed that he received services from a legal aid office." [7] The Committee described the attorney's ethical obligation to maintain his client's secrets as broad:

> The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. *This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge.*

*Id.* (emphasis added).[8] The Committee added that information falls within the ambit of the prohibition against revealing a client's secrets when that information has been "gained in the professional relationship, is contained in the client files, and its disclosure might be embarrassing or likely to be detrimental to the client." The material revealed by Gonzalez in this case falls well within this standard.

Gonzalez argues that he was obliged to disclose the information at issue because, under local court practice, his motion to

---

**7.** See also *In re Advisory Opinion No. 544,* 103 N.J. 399, 511 A.2d 609 (1986), a case in which the Supreme Court of New Jersey reached the same conclusion.

**8.** Ethical Consideration 4–4 of the ABA's Model Code of Professional Responsibility is identical, in pertinent part, to the quoted language from Legal Ethics Opinion No. 1300, *supra. See United States v. Kasmir,* 499 F.2d 444, 453 n. 6 (5th Cir.1974) (quoting Ethical Consideration 4–4), *rev'd on other grounds sub nom Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). We note that "[u]nlike the Disciplinary Rules, which are mandatory, the Ethical Considerations are 'aspirational in character and represent the objectives toward which every member of the profession should strive.' " *Kessenich v. Commodity Futures Trading Comm'n,* 221 U.S.App.D.C. 314, 321, 684 F.2d 88, 95 (1982) (per curiam).

withdraw would otherwise have been denied. This contention is somewhat undermined by Gonzalez' inability, at oral argument, to cite any authority for, or to identify a single concrete example of, the purported local practice to which he alluded.[9] In any event, we agree with the Board that Gonzalez could have submitted his documentation *in camera,* and that he could also have made appropriate redactions of the material most potentially damaging to his clients (*e.g.,* his allegations that A.A. had misrepresented facts to him and his suggestion, in one of the letters, that a demand of $90,000 by the plaintiffs in the underlying litigation might be reasonable).

As noted in Virginia's Ethical Consideration 2–41,

> [a] lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of his client and the possibility of prejudice to his client as a result of his withdrawal. Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which the client is entitled, cooperating with counsel subsequently employed, *and otherwise endeavoring to minimize the possibility of harm.*

Va. S.Ct. Prof. Resp. Canons, EC 2–41 (Michie 1998) (emphasis added). Contrary to this admonition, Gonzalez revealed secret information about his clients in his motion to withdraw and in the attachments thereto, and he failed to take steps to minimize the possibility of harm.

 Finally, Gonzalez contends that the Board usurped the authority of the Hearing Committee by overruling what Gonzalez characterizes as the Committee's factual findings. Gonzalez points out, correctly, that the Committee heard live evidence and that the Board did not. In our view, however, the differences in analysis between the Board and the Committee relate exclusively to the legal consequences of essentially undisputed evidentiary facts. Gonzalez suggested at oral argument that the Board should have deferred to the Hearing Committee's views as to the purpose of DR 4–101(B)(1) and as to the type of information that constitutes a client's "secret," but these are not issues of evidentiary fact, and no deference to the Committee was owed by the Board.

 We recognize, as did the Board, that if his substantive complaints against A.A. and her company were warranted, then Gonzalez faced a difficult situation. But Bar Counsel and the Board have both recommended an informal admonition, the least severe of the available sanctions. No party has sought, and we are not disposed to impose, any sterner discipline. We have no doubt that Gonzalez revealed his client's secrets, and an appropriate (if relatively modest) sanction is called for. Accordingly, Bar Counsel is hereby directed to issue an informal admonition to Gonzalez.

*So ordered.*

---

9. In support of his claim that such a practice exists, Gonzalez pointed out, accurately, that his initial motion to withdraw was rejected by the Circuit Court because it had not been personally served on his clients. He argued that the court's enforcement of this procedural requirement conveyed a message that a strong substantive justification would be required before such a motion would be granted. In our view, the question whether service of the motion was procedurally sufficient has no logical bearing on the factual showing, on the merits, which will be required of an attorney who has filed a motion to withdraw.