Jervon L. HERBIN, Appellant,

v.

Janet C. HOEFFEL, et al., Appellees.

Nos. 99–CV–1371, 99–CV–1575, and 00–CV–18.

District of Columbia Court of Appeals.

Submitted Dec. 18, 2000.

Decided Aug. 29, 2002.

Jervon L. Herbin, pro se.

Blair G. Brown, Washington, DC, was on the brief for appellee Janet C. Hoeffel.

Before SCHWELB, RUIZ, and REID, Associate Judges.

RUIZ, Associate Judge:

Jervon L. Herbin filed civil suits for damages against Janet Hoeffel and officers and members of the board of the D.C. Public Defender Service. He appeals the trial court's grant of summary judgment to appellee Hoeffel on Herbin's claim of spoliation of evidence, and the trial court's order of dismissal for failure to state a claim of his complaint based on a breach of client confidences against Hoeffel and the PDS defendants. We affirm in part, and reverse and remand in part.

## I. STATEMENT OF THE CASE

### A. *Background*

We review these cases for the second time. In July of 1996, appellant filed an action *pro se* (hereinafter Claim I), alleging that Hoeffel, a former attorney with PDS he claims represented him,[1] "willfully, deliberately, and maliciously withheld or disguarded [sic] and/or destroyed documents" which he asserts were necessary to present as evidence in his upcoming criminal defense to charges of malicious wounding, forcible sodomy, attempted rape and abduction in Loudoun County, Virginia.[2]

The following year appellant filed a related complaint against Hoeffel and officers and members of the board of PDS (hereinafter Claim II), alleging that on February 20, 1996, Hoeffel breached a duty of confidence she owed to him by providing information to prosecutors in Virginia which "enabled such officials to serve a search warrant" on him, and that the PDS defendants authorized or failed to prevent it, or to train or monitor Hoeffel. The trial court dismissed both complaints and Herbin appealed. In *Herbin v. Hoeffel,* 727 A.2d 883 (D.C.1999) (*Herbin I*), we reversed, holding that dismissal of the complaint in Claim I was improper because the trial court had erroneously converted Hoeffel's motion to dismiss into a motion for summary judgment by relying on information outside the complaint without first giving appellant notice of his right to present additional material in support of his opposition. *See id.* at 887. With respect to Claim II, we held that the trial court was required by Superior Court Civil Rule 54–II to assist appellant, who was proceeding *in forma pauperis,* to serve process on the PDS defendants and therefore could not dismiss that action based on appellant's failure to effect service. *See id.* at 888.

### B. *Claim I*

Following remand, Hoeffel filed a motion for summary judgment in Claim I, the

---

1. According to a letter from the Director of PDS, the Public Defender Service's representation of appellant ended with his sentencing on October 18, 1990. PDS claims that appellant was represented by PDS attorney Sharon Styles and that Hoeffel never represented appellant.

2. In January of 1996, appellant was arrested and charged with several offenses in the Circuit Court of Virginia, Loudoun County, and he informed his Virginia counsel that he had

spent some time in various psychiatric institutes in the past and that he had given those records to Hoeffel for safekeeping. Although appellant's attorney attempted to obtain these records from her, Hoeffel informed him that she did not have the documents and did not wish to be contacted further regarding the matter. *See Herbin v. Hoeffel,* 727 A.2d 883, 885 (D.C.1999) (*Herbin I* ). Appellant was convicted in March 1997 and sentenced to imprisonment for 92 years.

spoliation complaint, which appellant opposed. The trial court (Hon. Richard A. Levie) granted summary judgment for Hoeffel, reasoning that the tort of spoliation of evidence does not apply to those situations in which the evidence allegedly destroyed is to be used in a criminal case. The trial court further ruled that, even assuming the tort applies, appellant could not state a cause of action because he had not shown that the unavailability of the documents impaired his defense in the criminal case, that the documents were material to his defense, or that his defense would have had a significant possibility of success even if he had the documents.

## C. Claim II

In Claim II, following remand, the trial court (Hon. Robert I. Richter) did not reach the issue of service of process because he dismissed the complaint for failure to state a cognizable claim. The court ruled that while "the assertion that a confidence was breached by a lawyer may, under some circumstances, constitute an actionable claim, ... where there is no causal connection made to the alleged harm, the complaint is deficient." Appellant, believing that *Herbin I* addressed the merits of Claim II, subsequently filed a "Motion to Vacate Erroneous Order Dismissing with Prejudice Plaintiff's Complaint and to Reinstate the Complaint in the Instant Action." The trial court denied his motion, noting that *Herbin I* upheld the factual sufficiency of the complaint in Claim I, not Claim II.

Herbin appealed from the judgments in both cases and, at his request, we consolidated his appeals from the trial court's orders in Claim I (No. 99–CV–1371) and Claim II (Nos. 99–CV–1575 and 00–CV–18).[3]

## II. ANALYSIS

### A. Claim I

■ In his appeal from summary judgment for Hoeffel in his claim for spoliation of evidence, appellant contends that there are genuine issues of material fact as to whether Hoeffel had a duty to preserve documents for him and whether she deprived him of documents that would have assisted his defense in the criminal case.[4] Appellee argues that the tort of spoliation of evidence does not apply to evidence to be used in a criminal case and that, even assuming it does, appellant has failed to prove a cause of action. She contends, as the trial court determined, that even assuming that appellee had a duty to preserve the documents, appellant has failed to present any evidence showing a connection between the unavailability of the documents and his ability to present a defense in his criminal trial.

■ We review a grant of summary judgment *de novo* to ensure that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. *See Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C.

---

3. The PDS defendants did not file a brief on appeal, presumably because they were not served with the complaint in Claim II. As his claims against the PDS defendants depend on Hoeffel's liability, our disposition of the complaint against Hoeffel also applies to his claims against the PDS defendants.

4. We have considered, and reject, appellant's unsupported comment that Judge Levie was

biased and should have recused because he engaged in *ex parte* communication with Hoeffel's lawyer and asked Hoeffel to speak to his son about law school. Nor do we think that Judge Levie's initial dismissal of his complaint without stating reasons, which is permitted by Superior Court Civil Rule 52(a), indicates bias on his part.

1994) (en banc). In ascertaining whether any material facts are in dispute, we view the entire record and we do so in the light most favorable to the party opposing the motion. *See Ferrell v. Rosenbaum,* 691 A.2d 641, 646 (D.C.1997).

In *Holmes v. Amerex Rent–A–Car,* 710 A.2d 846 (D.C.1998), we held that in order to prevail on a claim for the tort of negligent or reckless spoliation of evidence to be used in a civil case, a plaintiff must show, based on reasonable inferences derived from both existing and spoliated evidence,

(1) existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

*Id.* at 854. We did not in *Holmes* decide whether a spoliation claim will lie where the evidence lost is for use in a criminal proceeding, nor do we here. Assuming, *arguendo,* that the tort of spoliation applies when the underlying action is a criminal case, and that appellee destroyed evidence she was bound to preserve,[5] we agree with the trial court that appellant

has failed to show a proximate relationship between the documents he alleges she wrongfully destroyed and his defense in the criminal case.

Appellant's claim is that the documents would have provided a basis for an insanity defense against the criminal charges. He claims that the documents being held by appellee contained:

Medical records from Area C—Mental Health, Commonwealth Psychiatric Center, Area B—Mental Health Facility, Psychiatric Institute of Washington, Freedom of Information Act requests to the D.C. Parole Board which were prepared by Janet C. Hoeffel, EEG brain scan test results, Personally written notations on Mental Health Records from D.C. forensic Legal Services, and my attempt to voluntarily commit myself to St. Elizabeth's Hospital in Aug. of 1980.

Even assuming that all of the documents listed above existed and had been entered into evidence in the criminal case, appellant has not demonstrated that they would have shown he was suffering from a mental disease at the time of committing the criminal offense that entitled him to an insanity defense.[6] Appellant introduced evidence at his criminal trial of a history of physical and sexual abuse, drug use and institutionalization, including two institutionalizations during 1976–78, as well as evidence of treatment for drug and sexual problems. He attended a sex offender program at the August Institute from October 1993 to November 1994. Dr. Selvog,

---

5. Appellant claims that Hoeffel was his attorney (or as a PDS lawyer was in any event bound by PDS's obligations to him) and that she was his common-law wife. As noted earlier, see *supra* note 1, Hoeffel disputes that she ever represented appellant; she admits in an affidavit, however, that she had "an intimate relationship with Mr. Herbin from April 1993 until January 1996."

6. Because we assume that the facts alleged by appellant are true, and decide that grant of summary judgment was correct as a matter of law, there is no merit to appellant's argument that the grant of summary judgment violated his right to a jury trial.

the Institute's Assistant Clinical Director, who had interviewed appellant three months before the attack that led to his criminal prosecution, testified on his behalf, but did not opine that appellant suffered from mental illness.[7] Appellant also presented evidence of traumatic events that preceded the attack: that he had just broken up with his girlfriend, that he had been shot, and that he attempted suicide. Plaintiff sought four jury instructions relating to his insanity plea. None was given because the judge in the criminal trial ruled that there was "no evidence · . . . that at the time the offense was committed [appellant] was suffering from a mental disease or disorder."[8] Appellant's conviction was affirmed on appeal. *See Herbin v. Commonwealth*, 28 Va.App. 173, 503 S.E.2d 226 (1998).

On appeal from the trial court's dismissal of his spoliation claim, appellant fails to establish how additional documents containing information about previous institutionalizations similar to what he presented in the criminal trial would have helped his insanity defense to charges of rape, sodomy and malicious wounding committed in January 1996. Thus, because appellant has failed to present evidence of a proxi-

mate relationship between the unavailability of the allegedly destroyed documents and an impairment of his insanity defense, we agree with the trial court that summary judgment was proper because he cannot establish a necessary element of the tort of spoliation of evidence.[9]

### B. Claim II

Appellant also contends that the trial court erred in dismissing his complaint against Hoeffel and the PDS defendants in which he sought "relief for physical pain and suffering, legal malpractice, emotional damage, malicious interference, violation of my constitutional rights and breach of client confidences." He claims that Hoeffel conveyed "information" to law enforcement officials in Loudoun, Virginia, enabling them to serve a search warrant upon him, and claims that the PDS defendants either authorized it or failed to prevent her from doing so. The trial court dismissed the complaint, ruling that "there is no causal connection made to the alleged harm."

■ Hoeffel argues for the first time on appeal that we should affirm the trial court's dismissal of Claim II because the

---

7. Appellant was examined by two other physicians after he committed the attack, but he did not seek to introduce their opinion of his mental condition. Nor did he present his treating physician, Dr. Zeichner, who, according to appellant, had advised him to keep the records in question.

8. Virginia follows the *M'Naghten* test for insanity. *See Price v. Commonwealth*, 228 Va. 452, 323 S.E.2d 106, 110 (1984). Under *M'Naghten*, "it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know he was doing what was wrong." 323 S.E.2d at 109 (quoting *M'Naghten's Case*,

10 Clark and F. 200, 210, 8 Eng. Rep. 718, 722–23 (H.L.1843)). The irresistible impulse defense is available in Virginia, "where the accused's mind has become 'so impaired by disease that he is totally deprived of the mental power to control or restrain his act.'" *Godley v. Commonwealth*, 2 Va.App. 249, 343 S.E.2d 368, 370 (1986) (quoting *Thompson v. Commonwealth*, 193 Va. 704, 70 S.E.2d 284, 292 (1952)).

9. We also note that appellant does not explain why he, as the patient, would not have been able to obtain copies of the documents directly from the treating institutions, physicians and programs. Nor did appellant, as the trial court noted, show that he sought redress in the Virginia court to subpoena Hoeffel or the records for use in his criminal trial.

claim is *res judicata* as appellant's similar claims filed in U.S. District Courts in Virginia and in the District of Columbia were resolved against him, precluding the claim he filed in Superior Court.[10] We consider those dismissals even though they were not presented to the Superior Court in this action, because appellee, who has not yet filed an answer in Superior Court, would still be able to assert *res judicata* as an affirmative defense if we were to remand, and appellant had an opportunity to state his views in his reply brief—and has done so. *See Stanton v. District of Columbia Court of Appeals,* 326 U.S.App. D.C. 404, 409, 127 F.3d 72, 77 (1997). Both District Courts decided to dismiss appellant's federal claims for damages with prejudice[11] based on *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which requires that claims for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87, 114 S.Ct. 2364. We conclude that the federal claims ("violation of my constitutional rights") in the complaint filed in Superior Court are precluded by *res judicata.*

■■ Appellant's complaints in the federal courts, as here, also included state law claims for legal malpractice, breach of fiduciary duty and emotional harm. *Res judicata* bars a claim based on the same factual transaction and the same parties if an action was brought or could have been brought in a forum that has rendered a final decision on the merits. *See Leslie v. Laprade,* 726 A.2d 1228, 1230 (D.C.1999). All the lawsuits were based on the same factual transaction—Hoeffel's unauthorized disclosure of client confidences—and sued her and some of the PDS defendants. The question, then, is whether the federal courts decided the state claims. The order of dismissal in the action filed in the District Court for the District of Columbia expressly "decline[d] to exercise supplemental jurisdiction over any local law claims plaintiff may have." *See Herbin v. Hoeffel,* No. 99–1048 (D.D.C. May 2, 2000). Therefore, that dismissal does not preclude appellant's state claims filed in Superior Court.

■ The order of the District Court in Virginia does not expressly address the state law claims, but states generally that appellant's "claims of damages are dependent upon a judicial determination that he is being held in custody unconstitutionally." *Herbin v. Hoeffel,* No. 98–AM–233 (E.D.Va. March 24, 1998). The court reached that conclusion based on its reading of his claims as "clearly concern[ing] the legality of his confinement" as it "challenges various actions and inactions by defendants relating to his prosecution on

---

**10.** Appellant filed similar—but not identical—complaints in three different courts. The first was in Superior Court, filed on June 3, 1997; it was initially dismissed on February 23, 1998, and, after this court's remand order in May 1999, was dismissed for failure to state a claim on October 18, 1999. Appellant also filed a complaint, No. 99–1048, in the U.S. District Court for the Eastern District of Virginia on February 18, 1998, which was decided on March 24, 1998, and affirmed by the Fourth Circuit on November 19, 1998. He filed a third complaint, No. 98–233–AM, in the U.S. District Court for the District of Columbia on April 28, 1999, which was decided on May 2, 2000. Neither federal court referred to the two suits filed in the other courts.

**11.** The dismissals were without prejudice to appellant's filing a habeas corpus claim challenging his conviction and sentence.

criminal charges." *Id.* The defendants in that lawsuit included Hoeffel and several (but not all) of the PDS defendants sued in Superior Court, and also included police and prosecutors in the Virginia criminal action, all of whom were claimed to have been involved in a conspiracy to deprive appellant of his federally protected rights. In light of the broader conspiracy that was the main object of the lawsuit filed in federal court in Virginia and the District Court's careful language disposing of the case, which referred only to his claims under federal law, we do not think that the District Court's order dismissed the state law claims.[12] Therefore, *res judicata* does not bar the complaint filed in Superior Court for state law claims.

■■■ We review dismissal under Rule 12(b)(6) *de novo.* *See McCracken v. Walls–Kaufman,* 717 A.2d 346, 350 (D.C. 1998). This court applies the same standard used by the trial court, accepting the facts in the complaint as true, and viewing the complaint in the light most favorable to the plaintiff. *See Schiff v. AARP,* 697 A.2d 1193, 1196 (D.C.1997). A motion to dismiss is warranted when "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Klahr v. District of Columbia,* 576 A.2d 718, 721 (D.C.1990).

The complaint in this case stated in its entirety:

On 2–20–96 Janet C. Hoeffel of the D.C. Public Defender Serv. contacted law enforcement officials in and for the County of Loudoun Va. and conveyed information that enabled such officials to serve a search warrant upon me. Hoeffel provided such officials with a signed affidavit, by taking such actions Hoeffel breached my confidences in the D.C. Public Defender Serv. Thus violating my 6th, 5th, 8th, and 14th Amendment rights. All other defendants named in this action are being sued for either authorizing, failing to prevent such action, failing to train monitor and adequately supervise Hoeffel. Therefore, the Plaintiff seeks relief for physical pain and suffering, legal malpractice, emotional damage, malicious interference, violation of my constitutional rights and breach of client confidences. Plaintiff seeks punitive damages in the amount of; from each defendant in their individual capacities jointly and severally.

Wherefore, Plaintiff demands judgment against Defendant in the sum of $2,700,000.00 with interest and costs.

■■■ To demonstrate that an attorney has been negligent, a party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client. *See Chase v. Gilbert,* 499 A.2d 1203, 1211

---

**12.** The District Court's Order reads:

Accordingly, it is hereby ORDERED that:

1. Plaintiff's action is DISMISSED without prejudice. Plaintiff may resubmit the claims presented, subject to the limitations described above, in a writ of habeas corpus under 28 U.S.C. § 2254. The relief available under habeas corpus is setting aside of the petitioner's convictions; and

2. Plaintiff is ADVISED that compensatory and punitive damages are available in a 42 U.S.C. § 1983 action, but not by way

of a writ of habeas corpus. However, to recover damages for an allegedly unconstitutional confinement in a § 1983 action, plaintiff must prove that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 114 S.Ct. at 2374. Because plaintiff has not alleged any of these facts, he may not sue for monetary damages under 42 U.S.C. § 1983.

(D.C.1985). Appellant's complaint did not mention the substance of the information he claims Hoeffel disclosed, but suggests that it was confidential information derived from a lawyer-client relationship,[13] and that it "enabled" a search warrant to be served on him. For present purposes we must assume that Hoeffel and PDS had a duty to appellant and breached the applicable standard of care when Hoeffel allegedly gave confidential client information to prosecutors in Virginia in 1996. *See* Rule 1.6 of the DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT;[14] *In re Gonzalez,* 773 A.2d 1026, 1031–32 (D.C.2001); *Waldman v. Levine,* 544 A.2d 683, 690–91 (D.C. 1988).

■■■■■■ The legal issue we must decide in determining whether appellant's complaint states a claim is whether the tort claims for damages are, as is the case with the federal claims, dependent on a successful challenge to appellant's conviction. Unlike the cases cited by Hoeffel requiring that a criminal conviction be set aside before damages for attorney malpractice can be considered, the alleged malpractice in this case did not involve the more usual case against the lawyer representing the client in the criminal prosecution, and a claim that the lawyer's negligence resulted in conviction. *See McCord v. Bailey,* 204 U.S.App. D.C. 334, 636 F.2d 606 (1980). In such a case, it is logical to require a successful challenge to the conviction before monetary damages are assessed against the lawyer, because otherwise there is no causal connection between the lawyer's performance and the claimed injury. *But see id.,* 204 U.S.App.D.C. at 347 n. 4, 636 F.2d at 619 n. 4 (Wald, J., dissenting in part) ("[T]he standard of proof in a malpractice action might not be as strenuous as it is when questioning the constitutional adequacy of counsel.") (quoting *Walker v. Kruse,* 484 F.2d 802, 804 (7th Cir.1973)). In most cases a claim for legal malpractice (or what amounts to the same thing on the facts of this case, breach of a lawyer's fiduciary duty to a client) is directly connected to the aim of the attorney-client relationship—and thus of the lawyer's duty—to preserve the client's legal interests.[15]

---

**13.** In his brief on appeal, he states that Hoeffel "provided law enforcement personnel in and for the Commonwealth of Virginia with perjured affidavits, [appellant's] records sealed under the Federal Youth Corrections Act 5010(a) and a taped recording of appellant retrieved from a telephone call made on an agency phone line, all of which either enabled a warrant to issue and serve upon [appellant] and or provided duty to appellant's legal adversary."

**14.** Under Rule 1.6(f), the obligation to keep client confidences and secrets survives termination of the representation. Also, under subsection (b) of the Rule, it would not matter that Hoeffel herself was not Herbin's lawyer at PDS; what is important is whether the information she allegedly disclosed was either protected by the "attorney-client privilege," or "gained in the professional relationship" with PDS and the "disclosure of which would be embarrassing, or would be likely to be detrimental, to the client." *See also* Rule 1.10, Cmt. 3 (members of the same section of a legal services organization are considered to be members of a firm for purpose of imputed disqualification rule).

**15.** If the lawyer's breach occurs in the course of representation in a criminal trial, a client may claim that ineffective assistance of counsel prejudiced his criminal trial, entitling him to a new trial. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The lawyer's violation of a professional rule, if proven, could also be ground for professional discipline. Appellant's appointed counsel in the criminal action from the Virginia Office of the Public Defender, wrote to D.C. Bar Counsel at appellant's request about Hoeffel's failure to return counsel's phone calls or provide requested documentation. In his letter, counsel added something that "bothered" him: that the prosecutor in Virginia had given him a copy

Appellant's claim that Hoeffel's breach enabled Virginia prosecutors to serve a search warrant on him falls within this category. Though we construe facts in the complaint in appellant's favor, appellant's conclusory allegations of that harm do not allege facts that would support causation and injury sufficient to withstand a motion to dismiss. A plaintiff must link up the breach of duty to the loss he claims to have sustained. *See generally Chase,* 499 A.2d at 1212 (noting that plaintiff must show more than speculation and that attorney's negligence caused a legally cognizable injury). Here, the complaint does not allege that, but for Hoeffel's disclosure, a search warrant would not have been issued or been served; nor does it claim that without evidence seized during the search appellant would not have been charged, or would have fared better in his criminal trial, or that there would have been a different outcome in that trial. *See Cauman v. George Washington Univ.,* 630 A.2d 1104, 1105 (D.C.1993); *Niosi v. Aiello,* 69 A.2d 57, 60 (D.C.1949).

■ A more difficult question is raised by appellant's claim for "physical pain and suffering" and "emotional damages" resulting from Hoeffel's alleged breach of her ethical obligation. *Cf. McCord,* 204 U.S.App. D.C. at 339, 636 F.2d at 611 (noting that the "sole assertion of injury proximately caused by his counsels' malpractice is . . . fail[ure] to argue a defense

of 'official authorization' for the Watergate operation"). The trial court did not specifically address these claims, although both before the trial court and on appeal, Hoeffel interpreted appellant's complaint as alleging intentional infliction of emotional distress.[16] We are aware that the requirement for a successful challenge to conviction has been applied to suits for such damages based on similar state tort claims, but that also has been in cases where there is an essential interconnection between the claimed misconduct and the criminal conviction. *See Brandley v. Keeshan,* 64 F.3d 196, 199 (5th Cir.1995) (claim for damages resulting from malicious prosecution is dependent on, and does not accrue until, the underlying criminal prosecution has been terminated favorably to claimant). Here, however, there is no necessary incompatibility between the claimed injury of physical pain and suffering and emotional injury resulting from Hoeffel's alleged wrongful disclosure and appellant's conviction in the criminal trial. *Cf. Heck,* 512 U.S. at 486–87, 114 S.Ct. 2364 (federal damage claims under 42 U.S.C. § 1983 based on unlawfulness of conduct that resulted in conviction depend on setting aside of conviction). As we read the complaint, Herbin claims that his former attorney collaborated with prosecutors to ensure his prosecution and disclosed client confidences in the process, which caused him personal distress distinct from any injury resulting to a legal inter-

---

of appellant's presentence report from D.C.—a document that in Virginia would have been confidential and sealed by court order. Hoeffel wrote to Bar Counsel denying that she had ever had an attorney-client relationship with appellant, and that she had none of his papers or files. According to appellant, Bar Counsel did not pursue disciplinary action against Hoeffel.

**16.** On appeal Hoeffel argues that appellant's complaint claims his criminal conviction as the only injury resulting from the alleged mal-

practice and breach of fiduciary duty. Although appellant's *pro se* complaint mixes legal theories and harms in one sentence, we think it was clear enough to put Hoeffel on notice that he was claiming physical and emotional injury as a result of her alleged disclosure of his confidential information. *See Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985). Hoeffel's reading of the complaint as alleging intentional infliction of emotional distress concedes as much.

est—in short, a claim for intentional infliction of emotional distress.

■■■■ Noting that an element of the tort of intentional infliction of emotional distress is that defendant have engaged in "extreme or outrageous conduct," *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934–35 (D.C.1995), *cert. denied*, 519 U.S. 1148, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997), Hoeffel urges us to decide that the alleged disclosure of a client confidence by a lawyer in order to secure the prosecution of her former client does not sink to an "extreme and outrageous" level as a matter of law. *See Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C.1994) (noting that whether conduct is "extreme and outrageous" is in the first instance a question of law). Where reasonable people could differ, however, that issue must be submitted to the jury. *See Howard Univ. v. Best*, 484 A.2d 958, 985 (D.C.1984) (citations omitted). We think this is such a case.

■■■■ We have recently observed that disclosure of client confidences is "contrary to the fundamental principle that the attorney owes a fiduciary duty to [her] client and must serve the client's interest with the utmost loyalty and devotion." *In re Gonzalez*, 773 A.2d at 1031. That duty has been described as one of "uberrima fides, which means, most abundant good faith, requiring absolute and perfect candor, openness and honesty, and the absence of any concealment or deception." *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex.App.1991) (citations and internal quotations omitted). Applied to the duty of confidentiality, the obligation extends "not only to privileged 'confidences,' but also to unprivileged secrets; it 'exists without regard to the nature or source of the information or the fact that others share

the knowledge.'" *In re Gonzalez*, 773 A.2d at 1031 (quoting *Perillo v. Johnson*, 205 F.3d 775, 800 n. 9 (5th Cir.2000)). Thus, the allegation in the complaint that Hoeffel breached Herbin's client confidences and that she did so to assist in his prosecution, if true, is extremely serious misconduct on the part of an attorney.[17] *See id.* (client "embarrassment" sufficient to constitute violation of ethical rule prohibiting disclosure of client confidences and secrets). In light of the high value we place on a lawyer's duty of loyalty and to preserve client confidences, we are unwilling to state that the conduct alleged here, if true, is not "extreme and outrageous" as a matter of law, as "[a]ctions which violate public policy may constitute outrageous conduct sufficient to state a cause of action for infliction of emotional distress." *Howard Univ.*, 484 A.2d at 986; *cf. Williams v. Callaghan*, 938 F.Supp. 46, 51–52 (D.D.C. 1996) (lawyer's failure to adequately investigate, interview, cross-examine and otherwise zealously advocate does not constitute outrageous and egregious conduct).

At this preliminary stage of the proceeding, our job is not to evaluate whether appellant has proven his allegations, or whether we think he is likely to prevail; we must decide only whether it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Klahr*, 576 A.2d at 721. Even granting appellant's *pro se* complaint is extremely conclusive and vague, we cannot do so. Although not part of the complaint, there are enough conceded circumstances in the pleadings and other submissions in these cases that permit us to posit a set of facts that would further aggravate Hoeffel's alleged con-

**17.** There are certain exceptions to the lawyer's obligation of confidence, *see* Rule 1.6(c), but none is apparent from the face of the complaint.

duct in the eyes of the jury—that she acted not only intentionally in breach of her ethical duties, but that she did so out of personal feelings resulting from her relationship with a former client.[18] We therefore reverse and remand for a second time the dismissal of appellant's complaint in Claim II, this time for failure to state a claim,[19] insofar as the complaint claims intentional infliction of emotional distress: physical pain and suffering and emotional distress resulting from Hoeffel's alleged purposeful disclosure to prosecutors of information about her client that she was ethically bound to keep confidential.[20]

*So ordered.*

---

18. We note that Hoeffel denies, *inter alia,* that Herbin was ever her client, see *supra* notes 1, 5 and 14, but we cannot resolve such apparent factual disputes in ruling on a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.

19. In his appeal of the trial court's order denying his Motion to Vacate Erroneous Order, appellant misreads *Herbin I* as addressing the merits of Claim II. *Herbin I* upheld the sufficiency of the complaint in Claim I, on which the trial court later granted summary judgment to Hoeffel, which we now affirm. We did not in *Herbin I* address Claim II except with respect to the issue of service of process. *See* 727 A.2d at 888–89. Thus, we see no error in the trial court's order.

20. We also think that the complaint can be read as claiming damages for physical pain

and suffering and emotional damages resulting from Hoeffel's malpractice. *See Fielding v. Brebbia,* 130 U.S.App. D.C. 270, 272, 399 F.2d 1003, 1005 (1968) (noting, in interpreting sufficiency of complaint for malpractice, that "[t]his jurisdiction has been outstandingly alert to the delicacy of the status of attorneys who undertake to counsel a client"). Because we decide that the complaint states a claim for intentional infliction of emotional distress, we do not at this juncture decide whether a cause of action for malpractice lies where those are the only damages asserted. *See generally,* 3 RONALD E. MALLON & JEFFREY M. SMITH, LEGAL MALPRACTICE § 20.11, at 144 (5th ed.2000) (stating general rule that emotional damages are not recoverable as direct damages resulting from legal malpractice, but noting exceptions in cases of fraud, intentional conduct, willful fiduciary breach or physical contact).