Bruce LESLIE, et al., Appellants,

v.

John C. LaPRADE & Rona Foote Laprade, Appellees.

No. 97–CV–709.

District of Columbia Court of Appeals.

Argued Dec. 8, 1998.

Decided March 11, 1999.

Richard O'Connor, with whom Arthur Wagman was on the brief, for appellants.

Frazer Walton, Jr., Washington, DC, for appellee John C. Laprade.

Steven W. Teppler, Washington, DC, for appellee Rona Foot Laprade.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

This case is before us on review of an order granting summary judgment to appellees on the ground of res judicata, as well as an order imposing the sanction of attorney's fees against appellants under Super.Ct.Civ.R. 16. We sustain the judgment in part, but hold that it could not properly be entered on that ground with respect to certain claims that could not have been raised at the time of the order said to have had preclusive effect. We also hold that the trial court did not abuse its discretion in imposing the sanction of attorney's fees.

## I. The Facts

In 1990, Attorney John LaPrade sued Ernest Antignani to recover a fee for legal services provided to a company known as Gallagher's on the Hill for which Antignani was a guarantor (No. 90–CA–4636). In 1992, LaPrade was awarded a creditor's judgment of $14,314. Four months after the judgment, but before it was recorded, Antignani transferred two wholly-owned real properties and a one-half interest in a third into an irrevocable living trust, naming himself as trustee and beneficiary. After LaPrade recorded his judgment, he obtained a writ of execution on one of the real properties held in trust, 615 10th Street, N.E. (the "10th Street property"). Around this time LaPrade also filed another lawsuit against Antignani personally and as trustee (No. 93–CA–5260), seeking a declaratory judgment that the trust did not hold clear title to the properties.

At a Marshal's sale on July 7, 1993, LaPrade, who presumably was the only bidder, bought the 10th Street property for one dollar and had it deeded to himself and his wife, Rona LaPrade, as tenants by the entireties. After the sale, LaPrade filed a praecipe requesting that suit No. 93–CA–5260 be dismissed without prejudice. It was not reinstated, and has no further relevance to this appeal.

On August 5, 1993, LaPrade obtained a second writ of execution, this time on the

property at 1810 Kilbourne Place, N.W. (the "Kilbourne property"), of which the Antignani trust owned half. Antignani, alleging wrongful conduct by LaPrade,[1] then moved the court in No. 90–CA–4686 to set aside the Marshal's sale of the 10th Street property, strike the writ of execution on the Kilbourne property, and enjoin LaPrade from obtaining any further such writs on property belonging to the trust. Pending resolution of this motion, he sought to restrain the sale of the Kilbourne property. Judge Suda denied Antignani's motion in chambers on December 1, 1993, without opinion. Antignani took no appeal from this order.

On December 7, 1993, Bruce Leslie, "successor trustee" to Antignani, filed the action now before this court on behalf of the trust, initially naming only John LaPrade as defendant (No. 93–CA–13743). In the complaint, he sought to enjoin the proposed sale of the Kilbourne property scheduled for December 9th, and to vacate the prior sale of the 10th Street property. The parties agree that on December 9, 1993, at the proposed sale of the Kilbourne property, Antignani and LaPrade entered into a written agreement that appeared to settle the original creditor's judgment for additional consideration. One week later, however, Leslie amended the complaint in No. 93–CA–13743 to include a claim of unjust enrichment stemming from an alleged breach of this settlement agreement. The complaint was amended a second time to include claims of conspiracy and wrongful taking against Rona LaPrade, who was later joined as a co-defendant. The second amended complaint also named Antignani as a plaintiff.

Rona LaPrade was granted sixty days in which to conduct discovery, terminating at the end of October 1995. A pretrial conference was scheduled for October 5, 1995, but the plaintiffs' counsel, apparently believing the dates for pretrial and trial were to be reset since Rona LaPrade still had discovery requests outstanding, did not appear at the conference. The trial court dismissed the action for want of prosecution, but then vacated the dismissal upon request and reinstated the case, conditional upon the plaintiffs' paying the LaPrade's relevant attorney's fees and costs. Judge Rankin later set this amount at $3,610.

On February 21, 1997, the plaintiffs and Rona LaPrade each moved for summary judgment. Following a hearing on the motions, Judge Rankin granted summary judgment for both defendants on the ground that res judicata, arising out of Judge Suda's December 1, 1993 denial of the motion to set aside the sale in No. 90–CA–4686, barred all of the plaintiffs' claims. The plaintiffs now appeal.

## II. Discussion

### A. Summary Judgment

■ To be entitled to summary judgment, the defendants had to demonstrate that there was no genuine issue of material fact, and that, viewing the evidence most favorably to the plaintiffs, the defendants were nonetheless entitled to judgment as a matter of law. *See Carr v. Rose,* 701 A.2d 1065, 1070 (D.C. 1997). Res judicata can serve as a proper ground for summary judgment. *See id.*

■ Res judicata "precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding." *Id.* (citing *Molovinsky v. Monterey Coop.,* 689 A.2d 531, 533 (D.C.1996)). For the doctrine to apply, the prior proceeding must have resulted in a final judgment on the merits. *See id.; Interdonato v. Interdonato,* 521 A.2d 1124, 1131–32 n. 11 (D.C. 1987). Super.Ct.Civ.R. 54(a) defines "judgment" as "a decree and any order from which an appeal lies." We have held that when a party has an opportunity to appeal an adverse judgment, but fails to do so, the judgment becomes final. *See Stutsman v. Kaiser Found. Health Plan, Inc.,* 546 A.2d 367, 370 (D.C.1988); *Ali Baba Co. v. WILCO, Inc.,* 482 A.2d 418, 425 (D.C.1984).

---

1. The exact nature of the wrong alleged is not clear since the record contains only an incomplete copy of the motion. Apparently, however, Antignani claimed that the sale and the attachments were invalid because ownership of the property had been transferred to the trust before LaPrade recorded his creditor's judgment.

■ Here, Judge Suda denied on the merits Antignani's motion in No. 90–CA–4686 to set aside the sale of the 10th Street property and to strike the writ of execution. That denial could have been appealed, but Antignani did not appeal it. *Cf. Moradi v. Protas, Kay, Spivok & Protas, Chartered,* 494 A.2d 1329, 1331–32 (D.C.1985). True, he had also requested a temporary restraining order on the sale of the Kilbourne property, and relief of that kind ordinarily is not given preclusive effect. *See, e.g., Johnson v. Capital City Mortgage Corp.,* 723 A.2d 852, 856–57 (D.C.1999). Antignani, however, unmistakably sought nullification of the 10th Street property sale and writ of execution on the Kilbourne property, and he was denied that relief. He is thus bound by that order from which he took no appeal.

■ The appellants maintain, largely without discussion, that neither the trust nor the successor trustee, Leslie, was in "privity" with Antignani, the lone defendant (and movant) in No. 90–CA–4686. Exactly what turns on this point is not clear since Antignani was personally a party to both suits (subsequently added as a plaintiff in No. 93–CA–13743). In any case, privity is a functional concept entailing "mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Carr,* 701 A.2d at 1075 (citation omitted). Such identification exists as to property transferred in trust from one owner or trustee to a successor, *see First Nat'l Bank v. Ickes,* 81 U.S.App.D.C. 61, 63, 154 F.2d 851, 853 (1946), as was the case here.

■ Next, we must consider whether the claims in the action before Judge Suda arose out of the "same cause of action" as those in the present case. *Carr,* 701 A.2d at 1070. "It is the factual nucleus, not the theory upon which a plaintiff relies, which operates to constitute the cause of action for claim preclusion purposes." *Stutsman,* 546 A.2d at 370 (citation omitted). The 1993 motion to set aside the sale and strike the writs stemmed from the same factual nucleus as many of the plaintiffs' present claims: *i.e.,* the foreclosure and attempted foreclosure of trust property by LaPrade in execution of the creditor's judgment. Thus, it is of no import that the plaintiffs now attack the legality of the foreclosures on grounds other than those asserted before Judge Suda,[2] for res judicata bars not just those issues actually raised, "but also [those] which might have been presented." *Carr,* 701 A.2d at 1070. Antignani filed his motion to set aside the sale and strike the writs in August 1993. He filed two supplemental motions on November 30, 1993, and Judge Suda ruled on the motions the next day. Thus, as late as November 30, 1993, Antignani was still able to supplement and amend his motion to set aside the first sale and enjoin the second. By that date, he most certainly had knowledge of all the procedural improprieties the plaintiffs now assert with regard to the sale of the 10th Street property; and he should also have known of any irregularities attending the imminent sale of the Kilbourne property.

In sum, the plaintiffs' challenges to the validity of the sale and proposed sale of both properties could have been raised before Judge Suda and are barred by res judicata. With respect to those issues, summary judgment was properly granted.[3]

■ The plaintiffs have, however, made additional allegations against John LaPrade that concern the December 9, 1993, settlement agreement. As these could not have been raised before Judge Suda, they are not covered by res judicata. *See, e.g., Johnson v. Capital City Mortgage Corp.,* 723 A.2d at

---

2. As explained, note 1, *supra,* Antignani apparently moved to vacate the one sale and strike the writs as to both properties only on the ground that transfer of the properties to the trust had been validly achieved before LaPrade recorded his judgment. In the present suit, by contrast, the plaintiffs claim that LaPrade (1) failed to give Antignani and the trust thirty-days notice pursuant to D.C.Code § 45–715(b); (2) failed to conduct two appraisals of the property as required by law; (3) failed to run the requisite four advertisements of the property; and (4) bought the property for an unconscionable one-dollar bid.

3. Because the plaintiffs make no additional allegations against Rona LaPrade, summary judgment in her favor was correct in its entirety.

856. So we must determine whether further proceedings are necessary to resolve them.

The parties agree that Antignani and John LaPrade reached a written settlement agreement for additional consideration on December 9, 1993, resulting in cancellation of the proposed sale of the Kilbourne property.[4] But they disagree as to the circumstances surrounding the agreement and its terms. The appellants assert that LaPrade effectively coerced Antignani into modifying terms of the initial oral agreement and was thereby unjustly enriched. Both sides submitted affidavits on this issue.

In his affidavit,[5] Antignani stated that counsel for the parties had agreed "that the [creditor's] judgment would be paid by ... Ernest A. Antignani, with 615 10 St., N.E. to be reconveyed to the Trust." He further stated:

> When Mr. Antignani appeared at the courthouse immediately prior to the judicial sale set for the auction of 1810 Kilbourne Place, N.W., with the sum of $10,000 and a memo that the said sale would be cancelled and that the first parcel would be reconveyed to the Trust, [LaPrade] refused to halt the sale unless the memo was altered to read that 615 10 St., N.E., would remain [the LaPrades'] property.

> Mr. Antignani, under duress, accepted the altered note so as to halt the sale of 1810 Kilbourne Place, N.W., because the Trust held only a half interest in said property.

He also asserted that "the balance of $4310 [on the creditor's judgment]" was paid to John LaPrade one month later.

LaPrade's affidavit asserted a different version. "[M]inutes before the sale," he said, Antignani offered a written agreement to "induce" him to cancel it. "The inducement ... was that Mr. Antignani would not contest the transfer of 615—10th Street, N.E., and that he would pay a certain sum toward the balance owed to Mr. LaPrade on the Judgment and costs." In return, "the sale was cancelled." According to LaPrade, "Antignani wrote [this] new agreement in his own hand writing," containing the terms mentioned above. "At no time did [LaPrade] ma[k]e any agreement to reconvey the property at 615—10th Street to Mr. Antignani or the Antignani Trust."[6]

In addition, the parties dispute who has been paying on the two deeds of trust attached to the 10th Street property now owned by the LaPrades. In his affidavit, Antignani asserted that following the sale he had "made many payments on the first deed of trust and all of the payments on the second deed of trust" to that point. LaPrade, by contrast, stated in his opposition to summary judgment that he had paid both of the notes "at the rate of approximately $1,000 per month." The appellants appear to claim that, even though Antignani failed to pay interest and costs in addition to the original judgment amount, the creditor's judgment should be considered satisfied because he paid considerable sums on the two deeds of trust, which were legally the responsibility of the LaPrades.[7]

---

4. Rona LaPrade, who owns the 10th Street property with her husband as tenants by the entireties, is not alleged to have been a part of this agreement. We note that at a hearing in February 1994, the written agreement was read into the record, but was never made an exhibit.

5. The affidavit itself states only "that all the matters set forth in the [attached] Statement of Material Facts are true." The statements quoted in the text are from the referenced document.

6. LaPrade also asserted that the checks tendered by Antignani were "not negotiable." As attachments to their 1997 summary judgment motion, however, the plaintiffs submitted photocopies of two cashiers checks payable to John LaPrade; notations on the back of one check indicate that it had been cashed or deposited. Unless LaPrade can adduce further proof that the checks were not negotiable, he will likely have failed to present a triable issue of fact on this point—a matter, however, that we leave to the trial court.

7. In his brief to this court, John LaPrade admits that the two deeds of trust are his responsibility, stating:

> The 615—10th Street property was encumbered by two deeds of trust against it which totaled an amount approximately equal to its fair market value. At the U.S. Marshall's [sic] auction, Appellee John C. LaPrade purchased the Antignani rental property subject to those deeds of trust....

Thus, appellants' argument is that since Antignani paid the third party noteholders, LaPrade was relieved of his responsibility under the notes and was benefited by Antignani in an equal amount—an indirect payment.

Based upon all of this proffered evidence, it is apparent that issues remain to be resolved regarding the terms included in the settlement agreement, whether duress was employed to obtain any of those terms, *see, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 175 (1981), whether there was a breach of the agreement, and whether—even in the absence of an agreement—the original creditor's judgment has been satisfied. We ·do not decide that Antignani has raised triable issues of fact on any of these points (on some or all of which the trial court might choose to order limited additional discovery, Super.Ct.Civ.R. 56(f)), but hold only that summary judgment could not be ordered as to them on the basis of res judicata.[8] To that extent, we reverse the award of summary judgment.

### B. The Rule 16 Sanction

A trial court's imposition of sanctions under Super.Ct.Civ.R. 16(*l*) or 16–II for failure to attend a pretrial conference will be reviewed only for an abuse of discretion. *See Providence Hosp. v. Dorsey,* 634 A.2d 1216, 1217–18 (D.C.1993). Here, the court's reinstatement of the case conditioned upon payment of attorney's fees and costs was a proper exercise of discretion. By failing to appear at the pretrial conference, the plaintiffs subjected themselves to sanctions. *See* Super.Ct.Civ.R. 16(*l*), 16–II. Attorney's fees are one of the lesser sanctions available under Rule 16–II, and are actually *required* unless "the noncompliance was substantially justified" or "other circumstances make an award of expenses unjust." Super.Ct.Civ.R. 16(*l*). The plaintiffs' counsel acknowledged that he had phoned the judge's chambers on the morning of the pretrial conference "to ascertain whether or not the pretrial was to be held," but upon learning the matter had been transferred to a different judge, made no further inquiry. Such conduct was not "substantially justified." The appellants also

question the amount of the sanction, $3,610, as "unfair and unjust." Although that figure is substantial, it was meant to cover the costs and fees of three lawyers for time spent attending the pretrial conference and responding to the plaintiffs' motion for reconsideration. We cannot find an abuse of discretion in the determination of the amount.

*Affirmed in part, and reversed in part; case remanded for further proceedings consistent with this opinion.*

---

8. The LaPrades argue that Leslie has no standing to sue on behalf of the trust because he is not legally a successor trustee, but cite no legal authority on this point and have provided only a copy of the trust document as evidence. That document does seem to recognize, although ambiguously, the possibility of unnamed successor trustees. Moreover, Leslie has submitted a sworn affidavit stating that he is the successor trustee, and Antignani has testified that he appointed Leslie to the position upon relinquishing it due to poor health. In any event, Antignani was added personally as a plaintiff in the present suit. Thus, the argument as to standing is without merit.