Bruce F. LOWREY, Appellant
and Cross–Appellee

v.

Peter S. GLASSMAN, et al., Appellees
and Cross–Appellants.

Nos. 04–CV–323, 04–CV–398.

District of Columbia Court of Appeals.

Argued April 7, 2005.
Decided Sept. 21, 2006.

Vanessa Carpenter Lourie, Washington, DC, for Bruce F. Lowrey.

Paul J. Kiernan, Washington, DC, for Peter S. Glassman and Friendship Family, LLC.

Before RUIZ, Associate Judge, and KING and TERRY, Senior Judges.[*]

TERRY, Senior Judge:

Appellant Bruce Lowrey filed this suit for injunctive and monetary relief against appellees Peter Glassman and Friendship Family, LLC (collectively "Friendship"). Dr. Glassman is a veterinarian who operates the Friendship Hospital for Animals in Northwest Washington; the property is owned by Friendship Family, LLC. Lowrey's complaint alleged that Friendship violated District of Columbia zoning requirements and created a nuisance through the operation of the clinic. In particular, he asserted that the reconfiguration of the hospital's parking lot violated applicable zoning requirements and caused damage to his property, because cars backing out of the lot came in contact with his home. Lowrey also claimed that the reconfiguration of the parking lot increased the level of noise, pollution, and physical disturbance around his home, thereby creating a private nuisance. Lowrey sought both damages and injunctive relief.

The principal issue before us concerns the trial court's decision to grant Friendship's motion to strike Lowrey's designation of expert witnesses and its contemporaneous grant of summary judgment to Friendship, on the ground that without expert testimony Friendship could not prove its case. We affirm both of those rulings. We reverse, however, the trial court's denial of Friendship's subsequent motion for attorney's fees and remand the case for reconsideration of that motion.

## I. FACTUAL BACKGROUND

The trial court entered a scheduling order on August 1, 2003. The order required, among other things, that Lowrey's Rule 26(b)(4) statement[1] be filed by October 1, 2003, and that Friendship's statement be filed by November 1, 2003. In addition, the discovery period was to close on December 1, 2003. Lowrey's Rule 26(b)(4) statement, which he filed on October 1, listed six named individuals and one unnamed "D.C. Zoning Inspector" as experts whom Lowrey "may call" at trial. The statement also outlined the facts as to which each individual "may testify," with the exception of the Zoning Inspector, who the statement said "will testify" to certain zoning violations. Finally, the statement declared that "[a]ll reports will be forwarded promptly upon receipt."

In a letter dated October 6, 2003, counsel for Friendship notified Lowrey's counsel that the Rule 26(b)(4) statement was "inadequate under the Rules" because it failed to provide "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Friendship also requested reports from Lowrey in order to be able to "call a responsive expert and to develop that expert's report."

---

[*] Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Super. Ct. Civ. R. 26(b)(4) outlines the discovery procedures for expert witness testimony.

Friendship asked that these reports be delivered no later than October 10. Counsel for Friendship sent similar requests on October 16, 27, and 29, all of which went unanswered. On November 3, 2003, Friendship filed with the court a "Statement Regarding Counter–Designation of Experts," which stated that Friendship was "unable ... to designate expert witnesses in opposition to those purportedly designated by plaintiff" because of the deficiencies in Lowrey's Rule 26(b)(4) statement and his failure to provide expert reports.

On November 18 Lowrey provided Friendship with two expert reports, one from an acoustical engineer (Mr. Beam) and the other from a structural engineer.[2] The structural engineer's report stated that, "at present, the structure is sound and competent." Lowrey provided no other expert reports and, in particular, no reports related to any actual damages he had incurred.[3] At his deposition on November 24, Lowrey admitted that none of the expert witnesses designated in the Rule 26(b)(4) statement had actually been

retained and that most of them had not even been contacted.[4] As a result, Friendship filed a motion to strike Lowrey's designation of expert witnesses on December 16, 2003. Separately, Friendship moved for summary judgment. Lowrey opposed both motions.

On February 17, 2004, the trial court entered an order granting Friendship's motions. It concluded that "[Lowrey's] discovery violations here are flagrant and repeated." Moreover, the court found that the representations made in Lowrey's Rule 26(b)(4) statement "border on being duplicitous, in that the experts designated therein had for the most part neither been retained, nor even contacted." The court determined that "[n]othing contained in the Rule 26(b)(4) statement was true, or, to put the best plaintiff's gloss on it, none of it was true as of the date the statement was submitted, and very little of it became true as time went on." Thus the court concluded that Lowrey's "extreme violation of the rules ... had to have been intentional, and neither financial consider-

2. The structural engineer who wrote the report was Howard J. Rosenberg, but the designated structural engineer in Lowrey's Rule 26(b)(4) statement was Colin McKenzie.

3. In his responses to Friendship's interrogatories, Lowrey claimed he had incurred costs of $220, but was seeking a total of $100,000 in damages "plus the diminution in value of [his] home." He also stated that he was "obtaining reports regarding the impact of these issues on [his] home."

4. For example, with respect to Don Boucher, an appraiser, Lowrey admitted that he "[had] not retained Mr. Boucher in this lawsuit," and that Mr. Boucher had not "officially" come to any conclusions about the effects of the hospital's alleged violations on the value of Lowrey's property. Indeed, Mr. Boucher had not, as of the date of the deposition, even visited the property. Lowrey also admitted that Mr. Boucher was of the opinion that the

market was so strong that the hospital's activities would not likely affect the value of Lowrey's property. Similarly, Lowrey acknowledged that he had not met with Brian Logan, the broker listed in his Rule 26(b)(4) statement, nor had he "hired [Logan] in any official capacity" or asked him to be a witness in the case. Lowrey stated that the designated structural engineer, Colin McKenzie, "was not hired because he was unable to do the report quickly enough." With regard to the two designated doctors, Lowrey admitted that he had not hired either to testify, nor had he discussed the case with them. Finally, Lowrey stated that he had "not talked to anyone" at the office of the Zoning Inspector, despite the Rule 26(b)(4) statement indicating that a "D.C. Zoning Inspector will testify as to defendants' failure to comply with the applicable zoning laws and regulations in the reconfiguration of the parking lot." He did state, however, that he had "contacted the zoning department."

ations, time pressures, other obligations, or the like can excuse such a flagrant violation." The court then granted summary judgment in favor of Friendship, ruling that "without expert witness support [Lowrey] simply cannot establish a zoning regulation violation or his own alleged structural property damage." Lowrey filed a timely notice of appeal.

Friendship thereafter filed a motion for an award of costs and attorney's fees. The court denied the motion for fees and partially granted the motion for costs. In so ruling, the court determined that Friendship was not entitled to attorney's fees under either Civil Rule 11 or Civil Rule 16, primarily because it was satisfied that Lowrey did not act in bad faith. From that ruling Friendship noted a cross-appeal, which we consolidated with Lowrey's original appeal.

## II. LOWREY'S APPEAL

### A. *Striking Expert Witnesses*

■ Lowrey argues, essentially, that the sanction imposed by the trial court was too severe under the circumstances because he did not willfully fail to comply with the rule, and the court should therefore have availed itself of a lesser sanction such as a continuance or the re-opening of discovery. We disagree. "The trial court has broad discretion to apply discovery sanctions...." *Weiner v. Kneller*, 557 A.2d 1306, 1309 (D.C.1989) (citation omitted). Thus "the judgment of the trial court will only be disturbed if this discretion has been abused, and abuse may only be found where the trial judge has imposed 'a penalty too strict or unnecessary under the circumstances.'" *Id.* (quoting *Henneke v. Sommer*, 431 A.2d 6, 8 (D.C.1981)).

■ When, as in this case, the trial court is considering the exclusion of evidence (*i.e.*, striking Lowrey's expert witnesses) as a sanction for discovery violations, there are five factors it must consider:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party; (2) whether excluding the evidence would incurably prejudice the party seeking to introduce it; (3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully; (4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and (5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.[5]

*Weiner,* 557 A.2d at 1311–1312; *accord, Forti v. Ashcraft & Gerel,* 864 A.2d 133, 138–139 (D.C.2004). "[A] failure to evaluate all the appropriate factors is likely to warrant reversal." *Abell, supra* note 5, 697 A.2d at 801 (citation omitted). In addition, "the trial court should also consider whether a less severe sanction ... is warranted." *Robinson v. Samuel C. Boyd & Son, Inc.,* 822 A.2d 1093, 1101 (D.C. 2003).

■ In this case, we hold, the trial court did not abuse its discretion when it granted Friendship's motion to strike Lowrey's expert witnesses. First, it is clear from the court's order that it considered the gravity of the sanction and the possibility of imposing one less severe. Second, although the trial judge did not explicitly evaluate all of the factors articulated in *Weiner,* he clearly considered them in

---

5. The last two factors apply primarily to situations in which the case has already gone to trial, and thus are not relevant to the instant case. *See Abell v. Wang,* 697 A.2d 796, 801 n. 3 (D.C.1997).

making his decision.[6] The judge stated in his opinion: "Although it might be argued that with respect to factors 1, 2, 4, and 5, the impact on the plaintiff might justify the court's forgiveness of the violation and an order that the discovery process with respect to expert witnesses start all over again, the court has concluded that factor 3 in the *Weiner* analysis does not permit such a charitable result."

■ While the trial court was required to consider all of the factors listed in *Weiner* and similar cases, exclusion of evidence "can be appropriate even when some of the factors are not met." *Sheppard v. Glock, Inc.,* 176 F.R.D. 471, 473 (E.D.Pa. 1997). It is also important to point out that "a finding of willfulness ... would go a considerable way toward supporting the judge's decision to strike...." *Abell,* 697 A.2d at 803. Here the court concluded that Lowrey's violation "could not have been inadvertent. It had to have been intentional...." The record amply supports that conclusion.[7] It was therefore not an abuse of discretion to strike the expert witnesses, since the third *Weiner* factor weighed so heavily in favor of a severe sanction.

Moreover, the first *Weiner* factor is not without significance here. As Friendship points out, it had no way of counter-designating expert witnesses when it did not know the substance of Lowrey's expert witness testimony. Surprisingly, Lowrey states in his brief that Friendship "never sought any information regarding Lowrey's planned experts or expert reports in his interrogatories or in his request for production of documents, yet [Friendship] claimed prejudice based on information that [it] actually obtained prior to the close of discovery." Lowrey apparently believes, on the basis of Rule 26(b)(4)(A)(i), that Friendship was entitled to that information only if it sought to obtain the information through interrogatories. But Lowrey overlooks or ignores the fact that the trial court's scheduling order imposed on Lowrey an affirmative duty to disclose the information. His breach of that duty was enough to justify the court's imposition of sanctions. *See In re Jam. J.,* 825 A.2d 902, 919–920 (D.C.2003) (a party can be required to disclose its experts by either a discovery request or a court order). Because Lowrey failed to meet its discovery obligations in a timely or candid manner, Friendship was prejudiced. We are fully satisfied that, under the circumstances, the penalty imposed was neither too strict nor unnecessary.

### B. *Summary Judgment*

■ "In reviewing a trial court order granting summary judgment, this court conducts an independent review of the record and applies the same standard used by the trial court." *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 626 (D.C. 1997). Summary judgment is proper when, viewing the facts in the light most favorable to the nonmoving party, the court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

6. We note that, while Friendship does an excellent job in its brief of evaluating each factor, we need not review the factors *de novo.* Rather, we must simply determine whether the trial court abused its discretion in imposing a particular sanction.

7. Though Lowrey maintains that his actions were not willful, the record clearly shows that Lowrey was aware that the expert witness designations in his Rule 26(b)(4) statement were, at best, disingenuous, since he admittedly had neither contacted nor retained most of them. *See* note 4, *supra.* The court's conclusion must therefore be upheld, since it is not "plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (2001).

matter of law." Super. Ct. Civ. R. 56(c). In order to avoid summary judgment, there must be some "significant probative evidence tending to support the complaint" so that a reasonable fact-finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Lowrey claims that it was error for the trial court to grant summary judgment because "his entire case did not rely on the testimony of experts, and summary judgment should not have been granted on that basis alone." We disagree. First, the very fact that Lowrey designated expert witnesses on such subjects as real estate appraisal, real estate brokerage, structural engineering, acoustical engineering, psychiatry, and zoning inspection belie his present assertions that he did not need experts to prove his case. Clearly he believed that the strength of his case depended largely upon the testimony of these witnesses in their particular areas of expertise. Moreover, some issues necessarily "require scientific or specialized knowledge or experience in order to be properly understood, and ... cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life." *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567, 582 (D.C.1996) (citation omitted). Thus, "[o]n such issues, the general rule in the District of Columbia is that testimony of one possessing special knowledge or skill is required in order to arrive at an intelligent conclusion." *Id.* (citation omitted); *see District of Columbia v. Shannon*, 696 A.2d 1359, 1365 (D.C.1997) (" 'if the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson,' expert

testimony ... will be required" (citation omitted)). Such is the case here.

■ Lowrey maintains that expert witnesses were not needed to show the configuration of the parking spaces or the fact that the spaces violated applicable zoning regulations. This is simply not the case. Friendship correctly argues that, to prove a zoning violation, "someone would have to explain to the factfinder what regulations applied and how they are construed." These are the things with which zoning inspectors—and not lay persons— are familiar. Indeed, Lowrey designated a "D.C. Zoning Inspector" to testify specifically for the purpose of proving a zoning violation. Because administrative agency employees have particular competence in their fields, " 'a court confronted with problems within an agency's area of specialization should have the advantage of whatever contributions the agency can make to the solutions.' " *Brawner Building, Inc. v. Shehyn*, 143 U.S.App. D.C. 125, 133–134, 442 F.2d 847, 855–856 (1971) (citation omitted). Indeed, in a case turning on the meaning of specific zoning regulations, the construction placed upon them by the department charged with their execution will generally control. *See Wright v. Wardman*, 55 App. D.C. 318, 319, 5 F.2d 380, 381 (1925). That information was not available here, and as a result there was no "significant probative evidence" in the record tending to support the claim of a zoning violation "such that a reasonable [fact-finder] could return a verdict" for Lowrey. *Anderson*, 477 U.S. at 248–249, 106 S.Ct. 2505.

■ Lowrey also claims that "[his] sole testimony would have been sufficient to support a claim for private nuisance, and he was not required to name any expert on that count." As we said in *Bernstein v. Fernandez*, 649 A.2d 1064 (D.C.1991), in which the plaintiff alleged, among other

things, a nuisance caused by the failure to repair structural damages to real property, "damages flowing from a nuisance are measured by the diminution of the property's value caused by the nuisance's interference with the enjoyment of the property." *Id.* at 1073. Lowrey claims that he, as a homeowner, could have testified to such a diminution in value without the aid of expert testimony, particularly because he is a licensed real estate broker. Friendship counters that Lowrey "was not qualified to give sufficient testimony about the value of his house simply because he is the owner...." Friendship also maintains that Lowrey's reliance on *Hartford Accident & Indemnity Co. v. Dikomey Manufacturing Jewelers, Inc.*, 409 A.2d 1076 (D.C.1979), is misplaced, because that case stands for the proposition that owners of personal property may testify as to its value, but says nothing about real property.

■■■ Friendship is correct in arguing that Lowrey cannot rely on *Hartford*, but there is case law suggesting that Lowrey probably could have testified as to his opinion regarding the value of his property. "The owner of ... land ... is generally held to be qualified to express his opinion of its value merely by virtue of his ownership. He is deemed to have sufficient knowledge of the price paid ... and the possibilities of the land for use, to have a reasonably good idea of what it is worth." *District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land*, 175 U.S.App. D.C. 135, 137 n. 4, 534 F.2d 337, 339 n. 4 (1976) (citation omitted).

This does not mean, however, that Lowrey could have provided testimony sufficient to establish damages in conjunction with a claim of private nuisance. As Friendship points out, Lowrey "could not testify as to the link between any alleged actions of the Defendants and the change in value." This "link" was of utmost importance to his case because, as we have noted, "damages flowing from a nuisance are measured by the diminution of the property's value caused by the nuisance's interference with the enjoyment of the property." *Bernstein*, 649 A.2d at 1073. Without an expert witness to testify to the causation of the alleged diminution in value, there was no "significant probative evidence tending to support the complaint" which would enable a reasonable fact-finder to return a verdict for Lowrey. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

We agree with the trial court that Lowrey could not prove his case without expert testimony, and that after his expert witnesses were stricken, his claims could not survive Friendship's motion for summary judgment.[8]

### III. FRIENDSHIP'S APPEAL

The trial court concluded that "the actions of [Lowrey] during the course of this action do not rise to such a level that the standard American Rule[9] governing attorney's fees should be set aside." Friendship argues that the trial court's reliance on the American Rule was misplaced and that "[Lowrey's] egregious conduct should be assessed with regard to Rule 11," a

---

8. Because the trial court was correct in granting summary judgment on the ground that Lowrey's claims required expert testimony, which he clearly could not provide after the court had properly granted the motion to strike his expert witnesses, we need not address Friendship's arguments in support of alternative grounds for summary judgment.

9. Under the so-called American Rule, "a prevailing litigant ordinarily may not recover attorney's fees from the defeated party when a case is concluded" unless that party acted in bad faith. *Jung v. Jung*, 844 A.2d 1099, 1107 (D.C.2004).

narrow exception to the American Rule.[10] Lowrey contends that Rule 11 does not apply because it explicitly states in subsection (d) that "subdivisions (a) through (c) ... do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rule 26 through 37." Friendship maintains, however, that Rule 11(d) does not preclude an award of attorney's fees because Lowrey submitted the statement as directed by the trial court's scheduling order, which is subject to the provisions of Rule 16 and not Rule 26. In other words, "[b]ecause Lowrey's false statements were made in response to the ... scheduling order and not in response to a discovery request, the trial court could have used Rule 11 to sanction Lowrey for submitting false statements."

We need not decide whether attorney's fees are warranted under Rule 11 because Rule 16 (*l*) expressly *requires* the payment of "reasonable expenses, including attorneys' fees, incurred because of any noncompliance with this Rule unless the Court finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." [11] We turn our focus, accordingly, to Rule 16.

Friendship argues that, "[w]here the trial court found that [Lowrey's] actions were in violation of the rules, the court was mandated by Rule 16 to sanction [Lowrey] to pay [Friendship's] expenses." We agree. "A trial court's imposition of sanctions under Super. Ct. Civ. R. 16 ... will be reviewed only for an abuse of discretion." *Leslie v. LaPrade*, 726 A.2d 1228, 1233 (D.C.1999). However, "a decision based on an erroneous view of the law ... would constitute an abuse of discretion." *Kleiman*, 633 A.2d at 1383. In this case the trial court declined to award Friendship attorney's fees under Rule 16 because "[Lowrey's] actions during discovery do not rise to the level of bad faith." We hold that the court abused its discretion in so ruling, because a showing of bad faith is not necessary under Rule 16 in order to *impose* attorney's fees. As we have held in the past, "[a]ttorneys' fees ... are actually *required* unless 'the noncompliance was substantially justified' or 'other circumstances make an award of expenses unjust.'" *Leslie*, 726 A.2d at 1233 (emphasis in original; citation omitted). No such finding was made in this case. Indeed, in granting Friendship's motions to strike Lowrey's expert witnesses and grant summary judgment, the

---

**10.** Super. Ct. Civ. R. 11 "provides for the imposition of sanctions against a party or attorney where the trial court finds that a pleading was factually groundless, unwarranted by existing law or a good faith argument for a modification of that law, or interposed for an improper purpose." *Kleiman v. Kleiman*, 633 A.2d 1378, 1382 (D.C.1993). Generally, "[t]his court reviews for abuse of discretion both a trial court's determination that Rule 11 was violated and the amount of sanctions ordered." *Cunningham v. Bathon*, 719 A.2d 497, 499 (D.C.1998) (citation omitted).

**11.** Rule 16 (*l*) states, in pertinent part:

If a party or a party's attorney fails to obey a scheduling or pretrial order, or fails to appear at a scheduling or pretrial conference, or is substantially unprepared to participate in the conference, or fails to participate in good faith or has otherwise not complied with the requirements of this Rule, the Court ... may make such orders with regard thereto as are just.... In lieu of or in addition to any other sanction, *the court shall require* the party or the attorney representing the party, or both, to pay the *reasonable expenses, including attorneys' fees*, incurred because of any noncompliance with this Rule unless the Court finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. [Emphasis added.]

trial court specifically concluded that Lowrey's "extreme violation of the rules ... had to have been intentional, and neither financial considerations, time pressures, other obligations, or the like can excuse such a flagrant violation."

Clearly, the court did not find the non-compliance "substantially justified," nor did it cite any "other circumstances" that would "make an award of expenses unjust." *Leslie,* 726 A.2d at 1233. At a minimum, the court must, on remand, evaluate Friendship's motion for attorney's fees under the proper Rule 16 standard before determining whether Friendship is entitled to be compensated for the expenses it incurred as a result of Lowrey's dilatory conduct.

## IV. CONCLUSION

In Lowrey's appeal, the judgment is affirmed. In Friendship's appeal, the order denying the motion for attorney's fees is reversed, and the case is remanded for further proceedings.

*So ordered.*