Thompson, Associate Judge, dissenting:
For a plaintiff to avoid summary judgment, "there must be some 'significant probative evidence tending to support the complaint' ...." Lowrey v. Glassman , 908 A.2d 30, 36 (D.C. 2006) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). " 'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.' " Brown v. George Washington Univ. , 802 A.2d 382, 385 (D.C. 2002) (quoting Anderson , 477 U.S. at 249-50, 106 S.Ct. 2505 ) (citations omitted). The question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson , 477 U.S. at 251, 106 S.Ct. 2505 (footnotes omitted) (emphasis in original). "Although we must view the record in the light most favorable to the non-moving party, the mere existence of a scintilla of evidence will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Campbell v. Noble , 962 A.2d 264, 266 (D.C. 2008) (internal quotation marks, brackets, and ellipses omitted).
I would affirm the grant of summary judgment to Howard University Hospital (the "Hospital") because I agree with the Superior Court that there is in the summary judgment record no significantly probative evidence to support Mr. Abdul-Azim's claim that the Hospital placed him on leave and (eventually) terminated him because it perceived him as having a disability.
As the Superior Court noted, the undisputed fact is that the Hospital placed Mr. Abdul-Azim on leave in order to investigate his alleged assault on his co-worker, and then required him to participate in Employee Assistance Program ("EAP)
*105 counseling to avoid a "possible escalation to workplace violence."[1] The evidence that the Hospital's Senior Employee and Labor-Relations Specialist, Candace Dabney-Smith, expressed concern about Mr. Abdul-Azim's "erratic" behavior and about the "[p]ossibility of something else driving what appears to be manic behavior" by Mr. Abdul-Azim did not raise a jury question about perceived-disability discrimination. Even if Ms. Dabney-Smith or others at the Hospital believed that Mr. Abdul-Azim had an impairment of some sort, the Superior Court correctly noted that under the District of Columbia Human Rights Act, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that [such a] perception caused the adverse employment action." Teru Chang v. Inst. For Pub.-Private P'ships, Inc. , 846 A.2d 318, 325 (D.C. 2004) (quoting Kelly v. Drexel Univ. , 94 F.3d 102, 109 (3d Cir. 1996) ).
In concluding that Mr. Abdul-Azim is entitled to get to a jury on his perceived-disability claim, the majority opinion focuses on the following notations made by Dr. Nolte about Mr. Abdul-Azim when she filled in the "Problem List" box on a "Physical Examination Form" she completed as part of Mr. Abdul-Azim's fitness-for-duty examination: "hyperactive/manic/poor concentration" and "uncontrolled HTN [presumably, shorthand for "hypertension"]." Dr. Nolte also checked a box next to "Not physically able to safely and efficiently perform the essential functions of the job because" (without filling in a reason). Dr. Nolte's use of slashes suggests that (as she testified in her deposition) she had not reached a definite view as to what condition or impairment, if any, Mr. Abdul-Azim might have.[2] But, more to the point, Dr. Nolte's assessment and her recommendation that Mr. Abdul-Azim be evaluated for "organic disease or psychiatric disorder" cannot form the basis of a perceived-disability claim even if she believed that Mr. Abdul-Azim was disabled.
As the Superior Court noted in its order, District of Columbia courts have "considered decisions construing the [Americans with Disabilities Act ("ADA") ] as persuasive in our decisions construing comparable sections of the [District of Columbia Human Rights Act]." Hodges v. District of Columbia , 959 F.Supp.2d 148, 153 (D.D.C.2013). Regarding the perceived-disability discrimination provision of the ADA, the federal courts have recognized that "[t]his provision is intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." Wooten v. Farmland Foods , 58 F.3d 382, 385 (8th Cir. 1995) (internal quotation marks omitted) (quoting School Bd. of Nassau Cty. v. Arline , 480 U.S. 273, 279, 285, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (noting that Congress "acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment," and that it extended coverage to individuals *106 who are regarded as having a physical or mental impairment because those persons' ability to work can be limited as a result of negative reactions to the perceived impairment, with the intent to replace "reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments").
Given that rationale for the extension of coverage to perceived-disability claims, courts have reasoned that when an employee's termination or other adverse employment action "is based upon the recommendations of physicians, then it is not based upon myths or stereotypes about the disabled and does not establish a perception of disability." Kozisek v. County of Seward , 539 F.3d 930, 935 (8th Cir. 2008) (perceived-disability claim brought under the ADA failed because employer's insistence upon the employee's completing inpatient alcohol treatment as a condition of keeping his job was not based upon misconceptions, myths, or stereotypes about his possible drinking problem, but on a licensed mental health therapist's recommendation that the employee complete such treatment after a very serious incident); Breitkreutz v. Cambrex Charles City, Inc. , 450 F.3d 780, 784 (8th Cir. 2006) (because the employer, in imposing lifting restrictions on the employee, followed the recommendations of occupational medicine specialist to whom company physician had referred the employee, the record did not create a genuine issue of material fact as to whether the employer perceived the employee as disabled); see also Rivera v. Pfizer Pharms., LLC , 521 F.3d 76, 86 (1st Cir. 2008) (citing Breitkreutz with approval); Butler v. Greif Bros. Serv. Corp. , 231 F. App'x 854, 858 n.3 (11th Cir. 2007) (same).
In light of the reasoning of the cases cited above, I believe we should conclude that Dr. Nolte's assessment based on her medical judgment and her recommendation that Mr. Abdul-Azim be required to undergo a psychiatric evaluation before returning to work does not as a matter of law establish that she "regarded" Mr. Abdul-Azim as having a disability within the meaning of D.C. Code § 2-1401.02(5A) (2016 Repl.). Accordingly, I cannot find error in the Superior Court's determination that there is insufficient evidence in the summary judgment record to conclude that Dr. Nolte recommended a psychiatric evaluation because she perceived him to have a disability.[3] And since Dr. Nolte's assessment is the only evidence of perceived disability Mr. Abdul-Azim proffered, the Superior Court did not err in entering summary judgment for the Hospital.[4]
*107 I also take issue with the majority conclusion that "there is sufficient evidence to permit a reasonable factfinder to conclude that the stated basis for Mr. Abdul-Azim's termination - 'failure to comply with Hospital directives for return to duty' - was a pretext for perceived-disability discrimination." Mr. Abdul-Azim confirmed during his deposition that he understood that a psychiatric evaluation was a requirement for his return to work and that he "had to provide [the Hospital] with written confirmation that [he] completed [a] psychiatric evaluation, in addition to the EAP counseling in order ... to return to work." The record thus supports the Superior Court's observation that Mr. Abdul-Azim "knew what he had to do to keep his job: provide [the Hospital] with documentation of his psychiatric evaluation, a task he never completed." What Mr. Abdul-Azim submitted to the Hospital, however, was a letter from a clinical psychologist confirming that he was receiving individual therapy services within a neuropsychology clinic. As the Superior Court found, "[t]here may be some overlap between a psychiatric evaluation and sessions of therapy, but [Mr. Abdul-Azim] tried to pass off therapy sessions as a psychiatric evaluation[.]" As the Hospital argues, the letter Mr. Abdul-Azim presented from his psychologist "was insufficient for [him] to return to work [ ] because it did not certify completion of a psychiatric evaluation or treatment." As the Hospital's action in terminating Mr. Abdul-Aim was "independently justified for [a] nondiscriminatory reason," Gay Rights Coal. of Georgetown Univ. Law Ctr. v. Georgetown Univ. , 536 A.2d 1, 29 (D.C. 1987), I see no basis on which a jury could conclude that the Hospital's cited reason for the termination was a pretext for perceived-disability discrimination.[5]
For the foregoing reasons, I respectfully dissent.

As the Superior Court observed, this was a "reasonable response to an alleged assault on a co-worker."

Another of Dr. Nolte's notes states that Mr. Abdul-Azim "said that another employee left b/c he was bipolar too." This may show that Mr. Abdul-Azim believed he had that condition, but it does not show that Dr. Nolte or the Hospital had that belief. Further, neither the Physical Examination Form nor anything else in the record reflects that Dr. Nolte (or, as the Superior Court found, anyone else at the Hospital) thought that Mr. Abdul-Azim had PTSD, which is what his Second Amended Complaint alleged.

My colleagues attach some significance to Mr. Abdul-Azim's assertion that he and his attorneys repeatedly tried to contact Dr. Nolte, but she did not respond. But other than a September 18, 2014, email written by Dr. Nolte stating that Mr. Abdul-Azim had "stopped by Employee Health ... wanting to know if he could have his annual screen done" (which the email states Employee Health does not do when employees are out on leave), the only evidence of that is statements to that effect by Mr. Abdul-Azim's lawyers, who seem to have been the ones who tried repeatedly to contact Dr. Nolte (and who received a response from the Hospital's lawyers). I do not think the lawyers' assertion supports an inference that Dr. Nolte's recommendation that Mr. Abdul-Azim be required to undergo a psychiatric evaluation was based on anything other than her medical judgment.

The undisputed fact that the Hospital referred Mr. Abdul-Azim to Dr. Nolte for a fitness-for-duty examination also will not support a perceived-disability discrimination claim. See, e.g. , Tice v. Centre Area Transp. Auth. , 247 F.3d 506, 515 (3d Cir. 2001) (fact that employer required employee to submit to an independent medical examination before he could be reinstated was insufficient to demonstrate that employer regarded employee as disabled where exam was necessary to establish the employee's fitness for the work at issue; reasoning that the employer's "request for such an appropriately-tailored examination only establishes that the employer harbors doubts (not certainties) with respect to an employee's ability to perform a particular job" and that "[d]oubts alone do not demonstrate that the employee was held in any particular regard"); Krocka v. City of Chi. , 203 F.3d 507, 515 (7th Cir. 2000) (rejecting employee's claim that employer's requirement that he undergo a medical evaluation was evidence that the employer regarded him as disabled); Sullivan v. River Valley Sch. Dist. , 197 F.3d 804, 811 (6th Cir. 1999) ("[R]equesting a mental evaluation does not indicate that an employer regards an employee as disabled[.]"); Cody v. CIGNA Healthcare of St. Louis, Inc. , 139 F.3d 595, 599 (8th Cir. 1998) (employer's request for mental examination of an employee who had exhibited unusual and troubling behavior did not establish that the employer regarded the employee as disabled; reasoning that "[e]mployers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims ...").

Cf. Patton v. Ingalls , No. 1:15cv297-HSO-JCG, 2016 WL 4083419, *3, 2016 U.S. Dist. LEXIS 100215, *7-9 (S.D. Miss. 2016) ("It is undisputed that Plaintiff was notified by telephone on June 24, 2015, that compliance with the mandatory referral to the EAP was a condition of her continued employment and that she must comply by June 26, 2015, or she would be terminated .... It is further undisputed that Plaintiff let the June 26, 2015, deadline pass without taking any action ..... [The employer] terminated Plaintiff four days after this deadline, when Plaintiff still had not contacted [the employer] or the EAP.... Because the competent summary judgment evidence demonstrates that Plaintiff was terminated for failure to participate in the EAP, a reasonable jury could not conclude that Plaintiff was terminated because of a disability.").